IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INGRID L. VINASCO, Individually and on behalf of similarly situated individuals | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. _____. |
| SWISSPORT USA, INC. | § § | |
| Defendant. | § § | |
| | § | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

Plaintiff Ingrid L. Vinasco ("Plaintiff") files this lawsuit against Swissport USA, Inc. ("Defendant") for Plaintiff and all others similarly situated, pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"). Defendant did not pay its employees, including the Plaintiff, wages for work performed by its employees. Defendant automatically deducted thirty (30) minutes from each shift worked by its employees for meal breaks regardless of whether the employee actually had an uninterrupted meal break. Defendant did not pay its employees, including the Plaintiff, for their overtime work at a rate of one and one-half times their regular rate of pay. As such, Defendant denied wages to Plaintiff and Defendant's employees, failed to pay overtime and failed to pay overtime at a rate of one and one half of regular rate. Should the Court deny conditional certification for a collective action, Plaintiff, as well as any other employees of Defendant, wish to pursue their claims on an individual basis.

### I. JURISDICTION AND VENUE

1. This court has jurisdiction because Plaintiff's claims arise under federal law pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, et seq.

1

2. Venue is proper in the Southern District of Texas because Defendant operates at airport facilities in this district and division and because a substantial portion of the events forming the basis of this suit occurred in this District.

## II.  PARTIES AND PERSONAL JURISDICTION

3. Plaintiff Ingrid L. Vinasco currently resides in The Woodlands, Texas.

4. Defendant Swissport USA, Inc. is a foreign corporation doing business in Harris County, Texas, and may be served by delivering a copy of the complaint and citation to its registered agent, CSC Lawyers Incorporating Service, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA, or at any other place where it may be found.

5. At all times material to this action, Defendant employed Plaintiff.

6. Class Members are all of Defendant's current and former hourly Cargo Warehouse Agents who were denied compensation for work performed and who were denied overtime as a result of either of the following two auto-deduction policies: (1) an auto-deduction that deducted thirty (30) minutes from every workday for meal breaks but required the employee to work during this time period; and/or (2) an auto-deduction for rounding start and end times.

7. Cargo Warehouse Agents have the duties of unloading Amazon packages from Amazon's private fleet of airplanes.

## FLSA COVERAGE

8. At all material times, Defendant has been an employer within the meaning of FLSA under 29 U.S.C. § 203(d).

9. At all material times, Defendant has been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

10. Plaintiff and Defendant's past and current employees defined in ¶ 6 are employees within the meaning of 29 U.S.C. § 203(e).

11. At all material times, Defendant has been an enterprise in commerce or in production of goods for commerce within the meaning of 3(s)(1) of the FLSA because Defendant has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

12. Defendant had, and continues to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

13. Defendant employed numerous employees, including Plaintiff, as a Cargo Warehouse Agent who engaged in interstate commerce because they were loading cargo into aircraft which aircraft flew across state lines.

14. Defendant itself is engaged in interstate commerce because Defendant ordered supplies across state lines, conducted business with merchants across state lines, and provided various aviation services in locations across the country.

15. At all material times, Defendant's employees, such as Plaintiff, engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

### III. TIME-KEEPING

16. Defendant maintains time records for all of its non-exempt hourly Cargo Warehouse Agents in all airports throughout the United States using the "Attendance Enterprise" time management system (hereinafter "AE").

17. At all times relevant to this Complaint, Defendant utilized an AE time management system for the Plaintiff and Putative Class Members.

18. These time management systems allow Defendant to keep completely automated time and attendance solutions, and to reduce labor costs by enforcing pay and work rules across the United States.

19. Defendant's time management systems also develop pay rules to minimize compliance risk by enforcing and tracking complex compliance requirements, such as FLSA laws and union rules.

20. Although these systems Defendant utilizes are usually designed to promote compliance with the law, regulations, and other applicable requirements, Defendant has and continue to program intentionally the time-keeping settings so that the time management system fails to credit Plaintiff and the Putative Class Members for all of their regular and/or overtime hours actually worked.

21. Defendant's intentional failure to credit Plaintiffs and the Putative Class Members for all of their hours worked occurred in the form of two types of automatic-deductions: (A) The Thirty-Minute Auto-Deduction, and (B) The "Rounding" Auto-Deduction.

### A. The "Thirty-Minute" Auto-Deduction

22. From the Plaintiff's date of hire in November 2017 to present, Defendant has scheduled Plaintiff and the Class Members for workweeks consisting of forty-two and one-half (42.5) hours.

23. From the Plaintiff's date of hire in November 2017 to present, Defendant has scheduled Plaintiff and the Class Members for workweeks consisting of five workdays per week at 8.5 hours per workday.

24. At all times material hereto, Plaintiff and the Class Members were expected to and often did work 42.5 hours per workweek as per their work schedule.

25. From the Plaintiff's date of hire until on or about January 1, 2018, Defendant has implemented and continue to follow a time management policy of "auto-deducting" 2.5 hours per workweek, or more specifically, thirty (30) minutes from each work day, from the timesheet of each and every Cargo Warehouse Agent within its employ, including the Plaintiff and the Class Members, before issuing payment for wages.

26. Defendant has not provided any written polices or procedures to Plaintiff and the Class Members to inform them that they are auto-deducting time, and the purpose of the auto-deduction.

27. Plaintiff presumes that the auto-deductions are for meal periods, but Defendant has not provided evidence of such a policy to the Plaintiff, either through the employee handbook, training, or any supplemental distributed materials.

28. From the Plaintiff's date of hire until on or about January 1, 2018, Defendant has failed to provide the Plaintiff and the Class Members any breaks or bona fide meal periods where they are not required to be actively working or where they are completely relieved of their duties for the purposes of eating without interruption. Until a policy change on or about January 1, 2018, Plaintiff was always "on-the-clock" and required to carry a walkie-talkie

with them to be available on-command, and were expected to be, and usually were, called to action early due to frequent understaffing.

29. A majority of the Plaintiff's meal-breaks are taken when Plaintiff is in transit between aircrafts since Plaintiff knows Defendant will not relieve Plaintiff for a break due to regular understaffing.

30. Defendant's employee handbook does not provide any policies relating to breaks or bona fide meal periods, and there exists no written policies or procedures that Defendant published informing Plaintiff and the Class Members of any right to breaks or meal periods "off-the-clock", nor any instruction on how to report if they did not receive their right to a bona fide meal period, or for the actual reasoning behind this auto-deduction if not for a meal period.

31. Defendant knew Plaintiff worked through lunch through verbal complaints, or constructively aware of the fact due to understaffing, that Plaintiff and the Class Members rarely, if ever received their full meal breaks, yet Defendant still enjoyed these benefits without compensating Plaintiff and the Class Members for it.

32. If this thirty-minute auto-deduction was not for a bona fide meal period, but instead used as an assumption that Defendant's employees will have a certain amount of "down" time, Plaintiff and the Class Members must still be compensated for that time in which they are still on duty, they are not relieved of their duties to do so as they wish and are not relieved for a specified time.

33. Defendant requires the Plaintiff and the Class Members to remain actively working or on "standby" and engaged to wait for planes throughout their entire 8.5-hour daily shifts and

are otherwise required to provide cargo and warehouse services continuously for the entire 8.5 hours of their daily shifts, preventing any uninterrupted breaks or meal periods.

34. Defendant has at all times material hereto, intentionally managed Cargo Warehouse Agent staffing levels to ensure that the Plaintiff and the Class Members work continuously providing aircraft fueling services during their entire workday hourly shifts of 8.5 hours without providing for the scheduling or staffing of Cargo Warehouse Agents for the purpose of relieving other Cargo Warehouse Agents, including the Plaintiff and the Class Members, so that they can reasonably take breaks or bona fide meal periods.

35. Until January 1, 2018, Defendant's policy of refusing to pay regular and/or overtime wages illegally requires all Cargo Warehouse Agents, including the Plaintiff and the Class Members, to work 2.5 hours per workweek without compensation ("for free") since the Defendants do not pay the Cargo Warehouse Agents their regular hourly rate or their overtime hourly rate (1 ½ times their regular hourly rate) for the 2.5 overtime hours that Defendant requires all Cargo Warehouse Agents to work per workweek due to this thirty-minute auto deduction.

36. Plaintiff notified Defendant and are fully aware that Plaintiff and the Class Members are not afforded the relief necessary to take thirty-minute breaks without interruption and have consciously made the decision to violate the FLSA and run the risk of a lawsuit and continue to run shifts understaffed instead of compensating Plaintiff and the Class Members for all time actually worked.

### B. The "Rounding" Auto-Deduction

37. Defendant's intentional default settings to the AE time management system causes the system to automatically "round off" the start and end times of the Plaintiffs and the Putative

7

Class Members to their scheduled start and stop times, thereby failing to credit, and compensate, Plaintiff and the Putative Class Members for all their hours actually worked.

38. For example, if Plaintiff's shift was scheduled to begin at 2:00 p.m., but Plaintiff clocked-in at 1:45 p.m. and performed work for the predominate benefit of Defendants until 2:00 p.m., and then continued to work through Plaintiff's entire shift, Defendant would not pay Plaintiff for the 15 minutes of time worked from 1:45 p.m. to 2:00 p.m., because the default rules that Defendant set, auto-deducted the time worked by its employees prior to the scheduled shift start time. The same "rounding" auto-deduction occurred at the end of shifts as well.

39. When Plaintiff clocked-in early or clocked-out late, they were either preparing for their shift by mapping out unloading strategy, went out to the warehouse early to start working, or stayed late due to delays.

40. Regardless of if the Defendants' do have a written policy or procedure relating to clock-in times, which again are not included in the employee handbook, Defendant cannot refuse to pay Plaintiff or the Putative Class Members for time where Defendant accepts the benefits of the work without properly compensating Plaintiff or the Putative Class Members for that work.

41. Furthermore, even if "rounding" auto-deduction policies are not per se unlawful, Defendant has have intentionally implemented default settings so that the "rounding" of time always occurs to the sole benefit of the employer and always to the determinant of Plaintiff and the Putative Class Members.

42. That Defendant's intentional conduct can be even further inferred by the fact that Defendant does not provide the Plaintiff and the Putative Class Members the ability to monitor their timesheets from a remote computer or location even though that is a basic application with AE time-management systems. Defendant only allow Plaintiff and the Putative Class Members to access their timesheets upon a request to a manager who must login for them from a work computer. Defendant either fails to pay for the basic function of allowing employees to check their timesheets online, or Defendant does not provide their employees with log-in information to access such information. Either way, Defendant's actions are intentional and for the sole purpose of protecting Defendant's auto-deduction schemes from being reported, and thus to maximize profits.

43. While Defendant did pay Plaintiffs and the Putative Class members for some hours worked up to and in addition to the 40 hours worked, they failed to pay for all of the Off-the-Clock hours worked, based upon (a) the auto-deduction of 30 minutes for each work shift, without providing any meal breaks where they were not on standby nor on any other break which would warrant such a deduction, and (b) the rounding auto-deductions which only credited Plaintiff and the Putative Class Members for their scheduled – as opposed to actual – hours which they were actively working for the benefit of the Defendant.

44. Defendant's policy of scheduling the Cargo Warehouse Agents, including the Plaintiff and the Putative Class Members, for a workweek of 42.5 hours without any breaks or meal periods, without staffing additional Cargo Warehouse Agents necessary to provide any breaks or meal periods, without any policy or rules requiring Cargo Warehouse Agents to take breaks or meal periods away from their work or "off-the-clock," evidences the Defendant's intentional and willful "cost engineering" of the work schedules which, until

9

on or about January 1, 2018, were cleverly designed and intended to provide the Defendant with at least 2.5 hours of extra, unpaid work from each and every Cargo Warehouse Agent for each and every workweek worked.

45. Plaintiff brings this action to recover unpaid regular and/or overtime wages that Defendant owes to Plaintiff, as well as the unpaid regular and overtime wages that Defendant owes to all the Putative Class Members for (3) years before the filing of this Complaint.

46. Plaintiff and the Putative Class Members are not otherwise exempt from the overtime wage payment requirements of the FLSA.

47. By the actions alleged herein, Defendant has willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

48. Defendant's willful and intentional actions, both in the past and continuing, constitute a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by endeavoring to prevent the proper compensation of all Cargo Warehouse Agents, including Plaintiff and the Putative Class Members, in accordance with § 206 and § 207 of the FLSA.

49. As a result of the Defendant's violations of the FLSA, Plaintiff and the Putative Class Members have suffered damages in the form of unpaid regular and/or overtime wages that Defendant was required to pay all Cargo Warehouse Agents in accordance with § 206 and § 207 of the FLSA.

50. Defendant has not made a good faith effort to comply with the FLSA with respect to its failure to compensate properly the Plaintiff and the Putative Class Members.

51. As a result of the unlawful acts of the Defendant, Plaintiff and the Putative Class Members for the past three (3) years preceding the filing of this action have been deprived of regular and/or overtime compensation in an amount to be determined at trial, and Plaintiff and the Putative Class Members are entitled to recover their unpaid compensation plus an equal amount of liquidated damages as well as their attorney's fees and costs pursuant to 29 U.S.C. § 216(b) along with all other relief to which they are entitled in law or equity.

52. Plaintiff has retained the undersigned attorney to represent the interests of the Plaintiff and the Putative Class Members and has agreed to pay him a reasonable attorney fee for prosecuting this action.

53. Defendant knew or should have known that it was in violation of FLSA.

54. Defendant, through its managers and supervisors, is in sole control Defendant's payroll practices.

55. Defendant, through its managers and supervisors, was solely responsible for training the Plaintiff and the putative class.

56. Defendant, through its managers and supervisor, has the sole authority to hire, fire and discipline Plaintiff and the putative class.

57. Plaintiff and the Putative Class wear uniforms identifying them as Defendant's employees.

## IV. **FLSA COLLECTIVE ACTION ALLEGATIONS**

58. Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. §216(b) on behalf of Cargo Warehouse Agents that Defendant employed as non-exempt, hourly employees involved in cargo services, or in substantially similar positions, within three (3) years from the commencement of this action. Defendant has not compensated these Cargo

Warehouse Agents, including Plaintiff, for the unpaid meal break or the "Rounding" as described above.

59. Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims that Plaintiff asserts because Plaintiff's are similar to the claims that Class Members possess.

60. Defendant subjected Class Members and Plaintiff (collectively as "Cargo Warehouse Agents"), to its common practice, policy, or plan of refusing to pay overtime for all work performed, in clear violation of the FLSA.

61. Cargo Warehouse Agents are similarly situated because they are all subject to Defendant's policy, scheme, and compensation plan.

62. Cargo Warehouse Agents work, or have worked, for Defendant but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty (40) per workweek for meal breaks during which they were not completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands.

63. Defendant did not fully compensate Cargo Warehouse Agents for hours worked in excess of forty (40) hours per workweek.

64. Cargo Warehouse Agents perform or have performed the same job duties.

65. Cargo Warehouse Agents regularly work or have worked in excess of forty (40) hours during a workweek.

66. Cargo Warehouse Agents are not exempt from receiving overtime compensation under the FLSA.

67. Defendant's failure to pay overtime compensation that the FLSA requires results from generally applicable policies or practices and does not depend on the personal circumstances of Cargo Warehouse Agents.

68. The specific job titles or precise job responsibilities of each Cargo Warehouse Agent do not prevent collective treatment.

69. Cargo Warehouse Agents, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek for interrupted or missed meal breaks.

70. Although the exact amount of damages may vary among Cargo Warehouse Agents, the damages for Cargo Warehouse Agents can be easily calculated, summed, and allocated based on a simple formula.

71. Cargo Warehouse Agents' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendant to comply with its obligation to compensate legally its employees.

72. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to Cargo Warehouse Agents. Defendant had a plan, policy or practice of not paying Cargo Warehouse Agents for interrupted or missed meal breaks.

73. The precise number of Class Members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from Class Members as part of the notice and "opt-in" process that 29 U.S.C. § 216(b) provides. The names and addresses of the Class Members of the collective action are discoverable from Defendant.

74. Plaintiff's claims herein are typical and representative of all other Plaintiffs who have consented to join as well as all other Cargo Warehouse Agents that Defendant employs.

75. Defendant has treated the Plaintiff and all other Cargo Warehouse Agents that Defendant employs at Bush Intercontinental Airport ("IAH"), at airports throughout the State of Texas, and at airports located across the United States in the same manner and violated their FLSA rights using the same auto-deduction policies as set forth below.

76. Plaintiff defines the Putative Class as follows:

> "All current and former Cargo Warehouse Agents who worked for Swissport USA, Inc. at George Bush Intercontinental Airport in the past three (3) years."

## V. COUNT ONE: VIOLATION OF 29 U.S.C. § 207 FAILURE TO PAY OVERTIME COMPENSATION FOR "OFF THE CLOCK" WORK

77. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

78. Throughout the relevant period, Defendant suffered and/or permitted Cargo Warehouse Agents to work additional time outside of their shift for work-related tasks. These tasks include, but are not limited to, unloading airplanes.

79. Cargo Warehouse Agents were actively discouraged from logging time outside the parameters set by Defendant. However, due to the demands of the job, Cargo Warehouse Agents routinely performed work related tasks outside of their scheduled shift.

80. Accordingly, consistent with the policies and procedures set up by Defendant, Cargo Warehouse Agents performed work for which they were not compensated. Defendant's policies and practices favored Defendant at the expense of Cargo Warehouse Agents.

81. Defendant violated and continues to violate the FLSA when it failed to pay Cargo Warehouse Agents for "off the clock" work under 29 U.S.C. § 207 as a non-exempt employee. Because of these violations, Cargo Warehouse Agents have suffered a wage loss in weeks where the total time worked (logged and unlogged) exceeds forty (40) hours.

82. Defendant's failure to pay overtime to Cargo Warehouse Agents, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83. Plaintiff worked off the clock and Defendant did not compensate Plaintiff for work performed off the clock. More specifically, Defendant required Plaintiff to work during Plaintiff's meal break, but Defendant automatically deducted thirty (30) minutes from each shift Plaintiff worked.

## VI. COUNT TWO: VIOLATION OF 29 U.S.C. § 207 FLSA OVERTIME VIOLATION

84. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

85. Defendant's practice of failing to pay Plaintiff time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

86. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendant or the Plaintiff.

## VII. DAMAGES SOUGHT

87. Cargo Warehouse Agents are entitled to recover their unpaid overtime wage compensation.

88. Cargo Warehouse Agents are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages. 29 U.S.C. § 216(b).

89. Cargo Warehouse Agents are entitled to recover attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b), and such other relief the Court deems fair and equitable.

## VIII.  JURY DEMAND

90. Plaintiff hereby requests trial by jury.

## IX. PRAYER

91. For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

    a. An order certifying this action as a collective action;

    b. An order finding that Defendant violated the FLSA;

    c. An order finding that these violations were willful;

    d. All unpaid wages;

    e. An equal amount as liquidated damages as allowed under the FLSA;

    f. Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate

    g. Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA; and,

    h. Such other and further relief to which Plaintiff and Putative Class Members may be entitled.

Respectfully submitted,

TRAN LAW FIRM

/s/ *Trang Q. Tran*

Trang Q. Tran
Texas Bar No. 00795787
2537 South Gessner Road, Suite 104
Houston, Texas 77063
Tel: (713) 223 – 8855
Fax: (713) 623 – 6399
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEY FOR PLAINTIFF**

**JURY DEMAND UNDER FED. R. CIV. P. 38**

Plaintiff demands a jury for each and every issue triable to a jury.